UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **STEVEN ANTHONY WALCOTT, JR** | **CIVIL ACTION** |
| **VERSUS** | **NO.  16-15594** |
| **TERREBONNE PARISH JAIL MEDICAL DEPARTMENT, ET. AL** | **SECTION "B"(4)** |

## REPORT AND RECOMMENDATION

The case and the motion were referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and ( C ) § 1915e(2), and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and (2)**. On October 31, 2016, the Court conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with the plaintiff participating by telephone conference call.[2]

Defendants Peedie Neal, Nurse Pat, Nurse Kim, Nurse Dominic, and Terrebonne Parish Jail Medical have also filed a **Motion to Dismiss (R. Doc. 12)**.

### I.    Factual Background

#### A.    Original Complaint

Steven Anthony Walcott, Jr, (hereinafter referred to as "Walcott") an inmate housed at Terrebonne Parish Criminal Justice Complex in Houma, Louisiana, filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against the defendants, the Terrebonne Parish Jail Medical Department, Nurse Pat, Nurse Kim, Nurse Dominic and Doctor/Nurse Peedie Neal.

---

[1]766 F.2d 179 (5th Cir. 1985).  The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges to have occurred and the legal basis for the claims.  The information elicited at the hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e).  *Wilson v. Barrientos*, 926 F.2d 480, 482 (5th Cir. 1991).

[2]Rec. Doc. No. 11.  The plaintiff was sworn prior to testifying.  The hearing was digitally recorded.

R. Doc. 1, p. 7. Walcott alleges that on about July 8 or 9, 2016, he was called to the nurse's station for the treatment of open wounds on his feet and irritated skin. *Id.* at p. 9.

Walcott alleges that he was asked to take a seat on the exam table where Nurse's Kim and Dominic took notice of his redness, whelps, skin peeling and bleeding from the loss of skin from the upper inner thighs on both legs including his genitalia. *Id.* He was administered a shot with sulfur after which the next morning he had an open blister wound on the right side of his neck and a large oval size sore spot on his stomach that turned into a boil. *Id.* He also alleges that his genitals became bloody raw and the head of his penis was bloody blistered also. *Id.*

Walcott alleges that thereafter he returned to the nurse's station after showing the nurse that the boil had opened and was leaking and had gotten worse. *Id.* at p. 10. The nurse examined his body and concluded that he was "whelped up" and red which indicated that he was given the wrong medicine and that he was allergic to sulfur. He was thereafter given another shot in his left arm which did not decrease the excruciating pain. *Id.* He was then placed on antibiotics which were supposed to be stronger but did not improve his condition and the blisters worsened.

He alleges that on July 14, 2016 he did not see a doctor and his skin continued to be inflamed which resulted in him walking with a limp to where he could no longer touch himself. He alleges that he could not shower because of the inflammation. *Id.* He finally saw a doctor on July 19, 2016 who immediately after looking at the blisters on his body identified the condition that he had along with the medication he should have been given to reverse it. *Id.*

Walcott alleges that the nurses intentionally administered the wrong medication and denied him proper medical care. *Id.* at p. 11. He complains that as a result he experienced excruciating and unbearable pain, extreme discomfort, sleepless nights and days, emotional distress and mental anguish. *Id.* He therefore seeks to have the nurses disciplined with a pay

reduction and 180 day suspension. He alternatively seeks to have them fired, his prison account reimbursed for the $60 deducted and damages in the amount of $250,000.

### B. *Spears* Hearing

Walcott testified to the following:

He is currently a pretrial detainee charged with second degree attempted murder and he was arrested on May 29, 2016. He testified that on July 8, 2016, he went into a cell and notified the nurse that he was having a breakout. He testified she gave him a shot which caused him to break out more. The nurse told him that he was given the wrong medication. They gave him another shot which made it worse. Instead of referring him to a doctor, they kept trying to figure out how to treat it. After three weeks he was seen by Dr. Haydel, the son of another doctor by the same name, who prescribed antibiotics but it did not help and it in fact made it worse. He further testified that the second Dr. Haydel, who was an older gentlemen knew what to do.

He testified that the nurses denied him adequate medical care and caused him to experience significant pain. He had a rash over his whole body. He filed the complaint against the nurses because they did not go to someone who knew how to fix the rash which resulted in him experiencing great pain.

He testified that Nurse Pat told him there was nothing else they could do for him. Nurses Kim and Dominque administered the wrong medication. He further testified that he sued Nurse Peddie because he is the head nurse who failed to refer him to a doctor and that one of the nurses told him that he is allergic to sulfur.

He testified that he finally saw the doctor sometime in August and his condition cleared up in a week. He testified that as a result of their alleged inadequate medical care, he seeks a reduction in their pay, compensatory and punitive damages.

### C. Medical Records

At the conclusion of the *Spears* Hearing the Court requested that counsel for the defendants provide both copies of the medical records concerning the claim to the undersigned and Mr. Walcott for *in camera* review. The request was complied with on November 7, 2016.

The medical records show that on June 8, 2016, Walcott, a diabetic, was seen by a nurse in the medical department for treatment concerning open wounds between his toes. Foot powder, antifungal cream were prescribed and reportedly he completed Keflex, which is used to treat skin infections caused by bacteria. He was thereafter prescribed Naproxen a nonsteroidal anti-inflammatory drug used to treat pain caused by gout and arthritis.[3]

On July 12, 2016, Walcott was seen by another nurse during the 4:00 P.M. med-pass and he complained of red bumps all over his body including both of his arms and thighs. He was started on Bactrum the day before and received two dosages which he said he had never taken before. As a result, he was sent to the medical department and a half an hour later he was seen by the medical department and the nurse noted that he had whelps to his back, thighs, legs, arms, chest, and face. He also complained of itching on his genital area and open sores were observed on the right side of his neck and right scrotum. The nurse believed that he had an allergic reaction to Bactrum which was discontinued and changed to Clindamycin and Benadryl. He was advised that if he continued to have problems to contact them.

On July 16, 2016, he returned to the medical department at 2:15 P.M. with a complaint of a boil popping and the nurse noted the presence of drainage from the right side of his stomach. It was further noted that he was on antibiotics and the nurse thereafter referred him for examination by a doctor.

---

[3] https://www.drugs.com/naproxen.html

On July 19, 2016, he was seen again by the medical department and prescribed Valtrex, which is used to treat herpes infection, shingles, cold sores and genital herpes. On that same day Walcott was evaluated at Chabert Medical Center an Ochsner facility where he was diagnosed with Herpes Simplex 1 & 2. The records show that he was also prescribed diphenhydramine for a pain and itching caused by cuts burns and poison ivy. Thereafter the records are void of any reference to the skin boils and out-break.

## II.     Standards of Review-Frivolousness

Title 28 U.S.C. §§ 1915A and Title 42 U.S.C. §§ 1997e (c) require the Court to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle*, 789 F.2d 318 (5th Cir. 1986), *modified on other grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992); *Neitzke*, 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

### III.   Analysis

#### A.   Claim against Nurse Pat, Nurse Kim, Nurse Dominic and Dr. Peedie Neal

Walcott complains that Nurse Pat, Nurse Kim, Nurse Dominic and Doctor/Nurse Peedie Neal should be held liable because they were each allegedly deliberately indifferent to his serious medical need which occurred when he presented to them for treatment of open wounds on his feet. He contends that he was given Bactrum to treat a bacterial infection and that his condition worsened and spread over all his body. He contends that they delayed referring him to a doctor which made his condition worse. He further contends that when he finally saw a doctor he immediately knew how to treat the condition, prescribed the right medicine and his condition improved.

The standard of conduct imposed on defendants with respect to medical care of inmates was clearly established by the Supreme Court in *Estelle v. Gamble*, 429 U.S. 97 (1976). In *Estelle*, the Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Id.* at 104 (citation omitted). This is true where the indifference is manifested by prison doctors in their response to the prisoner's needs. It is also true where the indifference is manifested by prison officials in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Id.* at 104-05.

In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. *Id.* at 106. Further, "[d]isagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). Therefore, inadequate medical treatment of inmates may, at a certain point, rise to the level of a constitutional violation, while malpractice or negligent care does

6

not. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993) ("It is clear that negligent medical treatment is not a cognizable basis upon which to predicate a section 1983 action"); *Williams v. Treen*, 671 F.2d 892, 901 (5th Cir. 1982) ("mere negligence in giving or failing to supply medical treatment would not support an action under Section 1983"). *See Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989) ("Mere negligence would not establish a claim.").

In addition, the mere delay alone in receiving medical treatment is usually not sufficient to state a claim under § 1983. *Mendoza*, 989 F.2d at 195; *see Wesson v. Oglesby*, 910 F.2d 278, 284 (5th Cir. 1990). *Cf. Simmons v. Clemons*, 752 F.2d 1053, 1056 (5th Cir. 1985). Regardless of the length of the delay, the plaintiff at a minimum must show deliberate indifference to a serious medical need to rise to the level of a constitutional violation. *Wilson v. Seiter*, 501 U.S. 294, 302-4 (1991); *see also Estelle,* 429 U.S. at 104-05.

In the case at bar, Walcott does not allege facts sufficient to rise to the level of a constitutional violation. Accepting his allegations as true, Walcott alleges that he received responsive treatment but that the medication prescribed was wrong, did not improve his condition and should have resulted in an earlier doctor's appointment. The medical records show that the first complaint occurred on June 8, 2016 and the medical staff believed that he had a bacterial infection. However, neither the anti-inflammatory, antibiotic or pain medication improved his condition. While the nurse thought that the worsening of his condition was due to an allergic reaction from the Bactrum even after it was discontinue he continue to suffer with open sores. After realizing that his condition was worsening or nonresponsive, he was referred to Chabert Medical at which point it was determined that he had Herpes Simplex 1 & 2. He was prescribed by the nurses and the on-staff doctor medication to treat herpes and his condition improved and the boils and skin outbursts no longer exist as he stopped complaining about this condition after the July 19, 2016 visit.

7

While Walcott is entitled to adequate medical care, he is not entitled to the treatment of his choice.  Further the evidence shows that on the day of his complaint sometimes within minutes he was seen by a nurse in the medical department, evaluated and then prescribed medication. The delay in seeing a doctor was only three days after his condition failed to improve.

The records show that it took a little over one month to figure out that his medical problem was not a simple bacterial infection but Herpes Simplex 1 & 2.  Once it was determined, the proper medication was prescribed.  Therefore, the Court finds that the deliberate indifference claim arising out of the medical care Walcott received by the nurses and the on-staff doctor nurse is frivolous or fails to state a claim for which relief may be granted, pursuant to 28 U.S.C. § 1915 (e)(2)(B)(I) and §1915(b)(1).

### B. Medical Department

Walcott also named the Terrebonne Parish Jails' Medical Department. However, a jail medical department is not a distinct, juridical entity capable of being sued. *Smith v. St. Tammany Parish Sheriff's Office,* No. 07–3525, 2008 WL 347801, at *2 (E.D. La. Feb. 6, 2008) ("A prison medical department is not an independent entity capable of being sued under 42 U.S.C. § 1983."); *accord Jiles v. Orleans Parish Prison Medical Clinic,* No. 09–8426, 2010 WL 3584059, at *2 (E.D. La. Sept. 7, 2010) ("A jail's medical department simply is not a juridical entity capable of being sued."); *Brewin v. St. Tammany Parish Correctional Center,* No. 08–0639, 2009 WL 1491179, at *2 (W.D. La. May 26, 2009) ("[A] 'department' within a prison facility is not a 'person' under § 1983."); *Martinez v. Larpenter,*  05–874, 2005 WL 3549524, at *5 (E.D. La. Nov. 1, 2005) (order adopting report)(citing *Oladipupo v. Austin,* 104 F.Supp.2d 626, 641–42 (W.D. La. 2000)).  Therefore, the claim against the Terrebonne Jail Medical Department is frivolous and should be dismissed.

## IV.     Recommendation

**IT IS RECOMMENDED** that Steven Anthony Walcott, Jr.'s § 1983 claims against Terrebonne Parish Jail Medical Department, Nurse Pat, Nurse Kim, Nurse Dominic and Peedie Neal be **DISMISSED WITH PREJUDICE** as frivolous and for failure to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915(e), § 1915A, and 42 U.S.C. § 1997e.

**IT IS FURTHER RECOMMENDED** that **Motion to Dismiss (R. Doc. 12)** be **DENIED AS MOOT.**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[4]

New Orleans, Louisiana, this 12th day of December 2016.

_____
KAREN WELLS ROBY
**UNITED STATES MAGISTRATE JUDGE**

---

[4]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.